IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KRISTIE SEALE,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) Case No.: 2:17-CV-286-VEH |
| **TARGET CORPORATION,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Plaintiff, Kristie Seale, against the Defendant, Target Corporation, which alleges that the Defendant's negligence and wantonness were the proximate cause of injuries to the Plaintiff when she slipped and fell on the Defendant's premises. (Doc. 1-1 at 2).

The case comes before the Court on the Defendant's Motion for Summary Judgment (the "Motion"). (Doc. 20). For the reasons stated herein, the Motion will be **DENIED**.

## I.   STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2)

proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II. FACTS[1]

On February 18, 2015, Kristie Seale was shopping at the Target store in Homewood, Alabama. After she had completed her shopping and was walking toward

---

[1] The facts set out herein are gleaned, in substantial part, from the facts proffered by the parties. To the extent that a party has proffered a fact which is not disputed, it has been included herein exactly as it was proffered, without citation. To the extent that a fact proffered by a party was disputed by another party, the Court first examined the proffered fact to determine whether the evidence cited in support of that fact actually supported the fact as stated. If it did not, the fact was not included. If it did, the Court then looked to whether the evidence cited in support of the dispute actually established a dispute. If it did not, the Court presented the fact as proffered, with citation to the evidence supporting the fact as proffered. If the cited evidence was disputed by contrary evidence, the evidence was viewed, as this Court must, in the light most favorable to the non-movant, with citation to such supporting evidence. If more explanation was needed, the Court included that information in an appropriate footnote. Some facts proffered by the parties, which the Court deemed irrelevant and/or immaterial, may have been omitted. Further, as necessary, the Court may have included additional facts cast in the light most favorable to the non-movant.

the register, her foot slipped out from under her and she fell. The incident was captured on Target's surveillance video, which also captured everything which occurred in that area approximately 30 minutes before and after the fall.

The video shows that during the approximately thirty minutes leading up to Seale's fall, many people walked near and through the area where the fall occurred. Approximately twelve minutes prior to Seale's fall, a female shopper is observed on the surveillance video apparently dropping a bottle of some kind in the area where Seale fell. (Doc. 20-4 at 1:47:49). The video does not show whether any liquid actually spilled from the bottle. The female shopper stops and appears to pick up the bottle and then the lid, then appears to walk down a nearby aisle and place the bottle on a low shelf. (Doc. 20-4 at 1:47:50-1:48:31). There is no evidence that the female shopper or any other Target customer alerted any Target employee of any liquid on the floor in that area.

Approximately ten minutes later, Target employee Eric Kidd is seen on the video walking through the area near where Seale fell. (Doc. 20-4 at 1:48:50). He can be seen in the video turning his head towards the area of the floor where the female shopper dropped the bottle, but he continues walking. In his deposition, Kidd testified as follows:

Q. And when you were walking, sir, did you see something on the

ground or do you recall seeing something on the ground?

A. I don't recall seeing anything.

Q. Let's go back a little bit. When we just watched that, would you agree with me that it appears that you look down at the ground?

A. I can't say that I was looking at the ground. I might have been looking at production location here on this end cap. I could have been turning looking towards a guest or heard something.

Q. Okay. Is it possible that you did see some kind of liquid on the ground and just don't remember it right now?

A. If I had seen a liquid on the ground, I would have taken action.

Q. Okay. And then there is the slip and fall that we are here about. And then -- let's look at this one more time. Would you agree with me that it looks like you do somewhat of a double take of whatever you looked at?

A. I don't know that I would call it a double take. You could rewind it.

Q. Once right there and –

A. I wouldn't call it a double take.

Q. All right. And so today you don't recall seeing any kind of substance or liquid or anything else when you walked past during that sequence of the video?

A. It's not that I don't recall, there was nothing there. Otherwise I would have taken action.

Q. Are you aware that there was some kind of liquid on the ground in that vicinity that my client slipped on?

6

A. There was no liquid in any area that I observed –

Q. All right.

A. -- in that video.

(Doc. 20-5 at 6(18-20)).

Seale testified in her deposition that the floor was wet. The following exchange took place:

Q. . . . Did you ever look down at the floor to see what you fell in?

A. Yeah. If you'll notice, I'm doing my hand (demonstrating) to the man, I said my -- it's wet, yeah, and even my coat was wet on the back (indicating).

Q. Did you smell your hand?

A. I did. Because I was afraid it was something gross, but it didn't have a smell really.

Q. So it was like water?

A. That would be my best guess is it was water.

* * *

Q. So it didn't have any smell or like greasy feel or anything to it?

A. I did not take note if it had any kind of texture or anything.

Q. All you knew was it was wet?

A. It was wet.

>Q. But it didn't smell?
>
>A. I did not smell anything.
>
>Q. In your opinion --
>
>A. In my opinion, I believe it was water.
>
>Q. Okay. Do you have a -- and I know you were embarrassed and you wanted to get out of there real quickly and got up and left, did you look around to see how much of an area of water there was?
>
>A. No, I did not. I know that there was water on both sides of me.
>
>Q. So at least it carried two feet?
>
>A. At least, yeah -- well, maybe three. Does that (indicating) not look like a yard? Maybe a yard.

(Doc. 20-3 at 9(30-31)).

The video shows that after Seale fell, multiple Target employees responded to the location of the fall and, after Seale had been helped up, the employees began cleaning up the substance on the floor with paper towels and putting out caution cones. (Doc. 20-4 at 1:59:24-2:03:08). During this time, one of the responding Target employees reaches down and touches the substance on the floor, smells the substance, and then flicks her hand several times to try and get the substance off. (Doc. 20-4 at 1:59:43-1:59:52).

A Target employee named Lance Self was the first employee to respond to the

accident scene. In his written "Team Member Witness Statement," Self wrote that there was "a big pool of water present," "probably a gallon." (Doc. 26-5 at 2). Similarly, Target employee Adrianna Warren completed a "LOD Investigation Report," in which she states that she observed "water, 5-6 inches in length." (Doc. 26-6 at 2). Warren also completed a "Guest Incident Report," in which she noted that there was "water, [a] pretty big puddle." (Doc. 26-7 at 2).

Kidd testified that Target requires all employees to be aware of potential spills or other hazards in their area and to take immediate action if a spill or other hazard is detected. Target employee Eric Kidd testified regarding Target's standard procedure for responding to spills,

> If a team member, an employee, notes a hazard such as a spill, they are responsible for blocking off that area, calling for additional assistance to assist in blocking off that area. Because the individual that spots that is going to stop and stand in that area to try to keep any other guests or team member from walking through it, risking a slip or a fall, or tracking it somewhere else that it could cause a greater risk.
>
> ***
>
> That initial team member waits until they have someone else there to help them or that that person who comes to help them has brought the proper materials to clean up what the spill may be.

(Doc. 20-5 at 4(11-12)). Mr. Kidd further testified that an employee will direct customers in the area away from the spill until it is cleaned up. (Doc. 20-5 at 4(12)).

9

The employees will also place a caution cone or sign in the area to warn customers. (Doc. 20-5 at 4(12)-5(13)). The following exchange also occurred in Kidd's deposition:

> Q. And then in terms of regularly inspecting certain areas of the store, is there any kind of guideline or rule that y'all follow in terms of specifying certain areas or trying to make sure there is no hazardous material or condition on the ground?
>
> A. It's not a regular inspection, and it's not anything that I'm aware of that's a formal procedure.
>
> * * *
>
> A. Not to say that it's always spotted simply because you have got one person covering an area of –well, several thousand square feet. It's impossible for them to have eyes on something all the time.
>
> * * *
>
> A. . . . So you have got a very small group of employees who are covering a very large area, and it's pretty much eyes only to be able to spot these things.

(Doc. 20-5 at 5(14-16)).

## III. ANALYSIS

In Alabama, in order to prove negligence in a slip and fall case, the Plaintiff must show:

> that the alleged substance that caused her to fall had been on the floor for such a length of time that constructive notice of its presence could be imputed to the defendants; that the defendants had actual notice that

the substance was on the floor; or that the defendants were delinquent in not discovering and removing the substance....

*Ex parte Wal-Mart Stores, Inc.*, 806 So. 2d 1247, 1249 (Ala. 2001).

The Defendant argues that

There is no evidence by which Mrs. Seale could prove that Target had actual knowledge of the presence of any liquid on the floor at the time of Plaintiff's fall. There is no testimony from any witness—not from the Plaintiff, any employee, or any other customer or guest in the area at the time of the incident—that demonstrates that Target had knowledge of the presence of liquid on the floor. Therefore, Plaintiff cannot prove actual notice to Target in order to support her claim.

(Doc. 20-1 at 9). However, there is evidence that a large amount of water, up to a gallon, spread out over a three foot area, was present where the Plaintiff fell. Furthermore, a reasonable jury could conclude, based on the video evidence, that Kidd, a Target employee, looked directly at all of this water and did nothing. Although Kidd testified that there was no liquid, the facts, cast in the light most favorable to the Plaintiff, demonstrate that there was a large amount of liquid there. A reasonable jury could determine that Kidd must have seen it. If that is so, Target had actual knowledge of the spill.

The Defendant also argues that it did not have constructive notice of the spill, citing *Tidd v. Wal-Mart Stores*, 757 F. Supp. 1322 (N.D. Ala. 1991) (Guin, S.J.), where Judge Guin granted summary judgment, writing:

> [H]ere is no evidence that the defendant had actual or constructive notice of the spill. The record is devoid of evidence regarding the length of time the spill had been on the floor. Plaintiff contends that the size of the spill is sufficient in itself to raise a question of fact regarding the length of time the spill had been down. The court finds that this fact without more is not sufficient to create a question of fact. A large spill can be as young as a small spill. A large spill can be as sudden as a small spill. Anyone who has held a burping baby knows that a large spill can occur with lightning speed. A large, sudden spill gives an invitor no additional notice merely because of its size. Were there evidence of a seeping container or an overturned container dripping onto a shelf and thence onto the floor, a reasonable inference could be drawn that a large spill had been there long enough to raise a duty on the part of the defendant to discover and remove it. The case at bar presents no such evidence.
>
> In the case at bar, the record is devoid of evidence that the defendant had any knowledge or that it should have had any knowledge of a hazardous condition on its premises.

*Tidd*, 757 F. Supp. at 1323–24. The instant case is distinguishable from *Tidd*, as there is video evidence showing not only the possible cause of the spill but also that the spill may have been present for 12 minutes before the Plaintiff fell[2], and evidence

---

[2] In its reply, the Defendant cites the following cases: *Ryles v. Wal-Mart Stores E. L.P.*, No. 2:04CV334-T, 2004 WL 3711972, at *2 (M.D. Ala. Dec. 16, 2004) (Thompson, J.) ("Where, as in the instant case, there is no evidence of a reasonably specific time frame and no evidence that the box had been on the floor long enough to have been bent, mashed or mutilated in any manner, the court will not simply assume constructive notice.") (brackets, internal quotations, and citation omitted); *Cantalupo v. John Anthony's Water Café, Inc.*, 281 A.D.2d 382, 721 N.Y.S.2d 397 (2001) ("In this case, there is no evidence that the alleged puddle on an 800-square-foot crowded dance floor was visible and apparent to the defendant's employees at any time before the accident."); *Sturdivant v. Target Corp.*, 464 F. Supp. 2d 596, 603 (N.D. Tex. 2006) ("Given the low visibility of the water and the evidence that the water was on the floor for five minutes, the Court concludes as a matter of law that Target did not have a reasonable opportunity to discover the water."); and *Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403, 405 (Ala. 1995) ("In light of the testimony of the produce clerk, who testified that he had walked

regarding the size and amount of the spill. There is a genuine issue of material fact as to whether the spill had been there long enough for Target to have constructive knowledge. Summary judgment will be denied as to that issue as well.

Furthermore, based on the facts of this case, the Court determines that there is a genuine issue of material fact as to whether, assuming Target did not have actual or constructive notice, it was delinquent in discovering and removing the substance.[3] Summary judgment will be denied as to that issue as well.

IV. **CONCLUSION**

For the foregoing reasons, the Motion is **DENIED**. By separate Order, this case will be set for a Pretrial Conference.

**DONE** and **ORDERED** this 8th day of August, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

down the aisle 5 to 10 minutes before Hose's accident, one must conclude that the murky liquid may have been dropped or leaked onto the floor only minutes before Hose fell."). Each of these cases is factually distinguishable from the instant case.

[3] Based on the Court's holding, it need not address the Defendant's argument that there is no evidence that it created the hazardous condition which caused the Plaintiff's fall. (Doc. 20-1 at 12-13).